Hillsborough,
No. 5278.

LAURENT JUTRAS *v.* J. SCANLON CO.

Argued December 2, 1964.
Decided February 1, 1965.

*James M. Winston* (by brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *John M. Tobin* (*Mr. Tobin* orally), for the defendant.

WHEELER, J. At the time of the accident the plaintiff was an employee of Davison Construction Company, Inc. the general contractor engaged in constructing the Manchester Memorial High School. The defendant J. Scanlon Company, Inc. was a subcontractor whose duties were to furnish and erect all steel necessary for the high school building.

Prior to the accident the defendant had erected certain steel "bar joists" or beams, designed to support the roof of the building, which ran parallel to the ground one end resting on a supporting steel beam and the other end on a brick wall. After the "bar joists" were placed in position defendant's welding crew would weld the joists to a supporting steel beam. It was the duty of the Davison Construction Co. to secure the bar joists in the brick wall. At the time of the accident the joists had not been welded to the steel beam by defendant Scanlon.

Employees of Davison placed on these joists certain wooden planks to furnish a staging for bricklayers to build up the brick wall. The plaintiff was directed to work on this staging to assist other brick masons who were working thereon.

After the plaintiff had been working on the staging for about two hours the joists collapsed precipitating him and other workmen to the ground.

The question presented here is whether the defendant owed a duty to the plaintiff in regard to welding of the ends of the bar joists to the supporting beams and whether the defendant negligently failed to perform that duty.

Plaintiff maintains that there was sufficient evidence to warrant findings that defendant Scanlon knew or should have known (1) that the brick wall, in which one end of the bar joists was anchored, was to be built up above the level of these joists; (2) that, as this project was being rushed to completion, this work would be executed without delay; (3) that Davison employees, such as the plaintiff, would be working on top of these joists in extending this wall. Plaintiff maintains further that it could be found that defendant's negligent failure to weld the other ends of the bar joists to the steel beam on which they rested caused or contributed to cause the collapse of the bar joists on which he was working in the erection of the brick wall, thus causing his injuries.

It is undisputed that it was the duty of defendant Scanlon to furnish and erect all the steel necessary for this building and in so doing it was its duty to secure the bar joists to the steel beam by the process of welding. There was evidence that one of its erection crews places the bar joists, steel beams and trusses in accordance with the specifications. Thereafter another of its crews comes along and "tack welds" one end of the bar joists to the steel beam thus securing them in permanent position, the other end being anchored in the brick wall by the contractor Davison.

There was testimony that this welding usually takes place on the same day within a few hours after the erection of the joists. It could be found on the evidence that the bar joists involved in this accident had been erected three days to a week without having been welded. A witness who had engaged in steel work since 1949 testified that he had seen staging set up on bar joists. Plaintiff testified that he had previously seen bar joists used as a base for a staging or planks and that in order to build up the brick wall the bar joists had to be used to support planks on which the masons worked. There was testimony that "they were in a hurry for that High School" and that the work was going in "a fast manner."

On this evidence it could be found by the jury that under the circumstances Scanlon should have anticipated that the bar joists would be used by the masons as a base for the planking necessary to finish the brick wall above the joists; and that this use would occur soon after the joists had been placed in position and the wall end secured in the brick wall. It could be further found that Scanlon's failure to weld the other end of the joists to the steel beam soon after they were erected, as is usually done, constituted negligent conduct. *McGlone* v. *Augus, Inc.*, 248 N. Y. 197. See Annot. 32 A.L.R. 2d 414, 416.

However, in order to recover it is elementary law that plaintiff had the burden of proving that Scanlon's negligence caused or contributed to cause the accident. There was evidence that planks had been placed on the bar joists at their wall end to support the men and materials necessary to extend the brick wall above the joists. That end of the joists was wedged in between at least one row of bricks. Plaintiff testified that he had been working on these planks for about two hours when "all I remember is going down and the stuff coming down on top of me." There was evidence that there were at least two of the bar joists on the ground after the accident "bent in a U shape." Plaintiff conceded in his brief that "there was no eye-witness testimony as to the reason for the collapse." The record does not contain any other type of testimony on what caused it.

We are of the opinion that the plaintiff failed to prove that it was probable the collapse was caused by the failure to weld the joists to the supporting beams rather than by weakness at the end of the joist where the planks, materials, and men were situated. It is our further opinion that a jury finding on the issue of causation would be based on mere speculation. *Ahern* v. *Company*, 88 N. H. 287; *Crocker* v. *Company*, 99 N. H. 330, 335.

*Exceptions overruled.*

Duncan, J., did not sit; the others concurred.